UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MOHAMMAD ZAKI AMAWI,

      Plaintiff,

           v.                           Case No. 13-cv-866-JPG-PMF

J.S. WALTON, *et al.*,

      Defendants.

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 166) of Magistrate Judge Philip M. Frazier recommending that the Court grant in part and deny in part the defendants' motion to dismiss or for summary judgment (Doc. 128).   Specifically, Magistrate Judge Frazier recommends the Court (1) deny the motion to the extent it seeks to dismiss plaintiff Mohammad Zaki Amawi's claims against the individual defendants under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violation of his due process rights (Count 1) and equal protection rights (Count 2) regarding his prison unit placement and (2) grant the motion to the extent it seeks summary judgment for failure to exhaust administrative remedies on Amawi's Administrative Procedures Act ("APA") claim against the Bureau of Prisons ("BOP") (Count 3).   The individual defendants object to Magistrate Judge Frazier's recommended disposition of Counts 1 and 2 (Doc. 168); no party has objected to the recommended disposition of Count 3.

## I.      Report and Recommendation Review Standard

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation.   Fed. R. Civ. P. 72(b)(3).   The Court must review *de novo* the portions of the report to which objections are made.

*Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## II.   Analysis

### A.   Count 3

The Court has reviewed the recommended disposition of Count 3, to which there is no objection, for clear error and finds none.   Accordingly, it will adopt the Report as to this claim and will grant the defendants' motion for summary judgment on Count 3.

### B.   Counts 1 and 2

#### 1.   Report and Objections

As for the recommended disposition of Counts 1 and 2, Magistrate Judge Frazier rejected the defendants' legal challenge to Amawi's ability to bring a *Bivens* claim for damages based on alleged violations of his due process and equal protection rights.   He noted that the Supreme Court and the Seventh Circuit Court of Appeals have allowed *Bivens* actions to proceed to provide potential monetary relief for such constitutional violations.   *See Davis v. Passman*, 442 U.S. 228 (1979) (deprivation of equal protection component of the Fifth Amendment due process clause); *Carlson v. Green*, 446 U.S. 14 (1980) (estate of a deceased federal prisoner could sue federal prison officials for due process, equal protection and Eighth Amendment violations); *Engel v. Buchan*, 710 F.3d 698 (7th Cir. 2013) (deprivation of due process by a Federal Bureau of Investigations agent); *Crowder v. True*, 74 F.3d 812 (7th Cir. 1996) (recognizing that *Bivens* extends to a federal prisoner's Fifth Amendment procedural due process claim).   Magistrate Judge Frazier further found Amawi had sufficiently stated facts supporting such a claim under the pleading standards set forth in Federal Rule of Civil Procedure 8(a) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

2

In their objections, the individual defendants argue that, as a matter of law, the Court should not infer a remedy under *Bivens* because the APA provides a sufficient remedy to challenge the alleged unconstitutional acts of the individual defendants.   The Court reviews this issue *de novo*.

       2.   <u>Background</u>

This case stems from Amawi's former incarceration at the United States Penitentiary at Marion, Illinois ("USP-Marion").   He had been confined to the Communications Management Unit ("CMU") at USP-Marion for more than four years.   In that unit, his communications with outside individuals were monitored and restricted more than those of inmates in other units.   He also was subject to other limitations not imposed on inmates in the general population at USP-Marion   In Count 1 he claims his placement and retention in the CMU and denial of a transfer deprived him of a liberty interest without due process of law in violation of the Fifth Amendment due process clause.   In Count 2 he claims that in placing him in the CMU, the individual defendants purposefully treated him differently from other inmates based on his race and religion in violation of the Fourteenth Amendment equal protection rights incorporated into the Fifth Amendment due process clause.

       3.   <u>*Bivens* Theory</u>

The defendants' objection is a legal one based on the breadth of the spectrum of causes of action for damages implied by *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 389-90 (1971).   In *Bivens*, the Supreme Court inferred a cause of action for damages against individual federal employees for a warrantless search and seizure in violation of the Fourth Amendment's prohibition on unreasonable search and seizure.   *Id.* at 389-90.   The Supreme Court noted that, although Congress had not expressly provided a statutory private right of action, there were "no special factors counselling hesitation in the absence of affirmative action

3

by Congress," *id.* at 396, and no express indication Congress intended *not* to allow a private cause

of action and instead to require pursuit of an alternative remedy that was equally effective, *id.* at

397.   The Supreme Court's decision to infer a private right of action was based on the general

premise that "'where federally protected rights have been invaded, it has been the rule from the

beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.'" *Id.*

at 392 (quoting *Bell v. Hood,* 327 U.S. 678, 684 (1946)).   These considerations have evolved and

been refined in the wake of *Bivens* into a two-part framework to identify the types of non-statutory

actions that will be allowed under a *Bivens* theory:

> In the first place, there is the question whether any alternative, existing process for
> protecting the interest amounts to a convincing reason for the Judicial Branch to
> refrain from providing a new and freestanding remedy in damages.   But even in
> the absence of an alternative, a *Bivens* remedy is a subject of judgment:   the federal
> courts must make the kind of remedial determination that is appropriate for a
> common-law tribunal, paying particular heed, however, to any special factors
> counselling hesitation before authorizing a new kind of federal litigation.

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (internal citations and quotations omitted); *accord*

*Minneci v. Pollard*, 132 S. Ct. 617, 621 (2012).

Since *Bivens*, the Supreme Court has extended its holding to equal protection claims for

discrimination in public employment, *Davis v Passman*, 442 U.S. 228, 230 (1979), and to

prisoners' due process, equal protection and Eighth Amendment claims based on medical care,

*Carlson v. Green*, 446 U.S. 14, 19-23 (1980).   The Seventh Circuit Court of Appeals has also

found a plaintiff may bring a *Bivens* action for a due process violation for failure to disclose

exculpatory evidence in a criminal proceeding in violation of *Brady v. Maryland*, 373 U.S. 83

(1963).   *Engel v. Buchan*, 710 F.3d 698, 702-03 (7th Cir. 2013) (citing *Manning v. Miller*, 355

F.3d 1028, 1031 n. 1 (7th Cir. 2004)).   Numerous other extensions of *Bivens* have been rejected.

*See Vance v. Rumsfeld*, 701 F.3d 193, 198 (7th Cir. 2012) (noting that since *Davis* and *Carlson*, the

Supreme Court "has not created another [non-statutory right of action] during the last 32 years –

though it has reversed more than a dozen appellate decisions that had created new actions for

damages"), *cert. denied*, 133 S. Ct. 2796 (2013).

    4.    <u>Application to Counts 1 and 2</u>

The Court now examines Amawi's due process and equal protection claims for damages

under the *Wilkie* framework to see whether he should be allowed to bring them using a *Bivens*

theory.

    a.    <u>Alternative Process for Protecting Rights</u>

The first step in the *Wilkie* framework asks "whether any alternative, existing process for

protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from

providing a new and freestanding remedy in damages."   *Wilkie v. Robbins*, 551 U.S. 537, 550

(2007).   With respect to this inquiry, the Seventh Circuit Court of Appeals has noted:

> The alternatives need not provide complete relief to preclude the *Bivens* remedy,
> and where Congress has created an "elaborate, comprehensive scheme" to address
> a certain kind of constitutional violation, *Bivens* will generally be unavailable even
> if that scheme leaves remedial holes.   Similarly, where the alternative remedies are
> the product of state law, they need not be "perfectly congruent" with the *Bivens*
> remedy; rather, the question is whether the alternatives provide roughly similar
> incentives for potential defendants to comply with the constitutional requirements
> while also providing roughly similar compensation to victims of violations.

*Engel v. Buchan*, 710 F.3d 698, 705 (7th Cir. 2013) (internal citations, quotations and brackets

omitted).

The defendants argue that the APA's comprehensive remedy scheme provides an adequate

alternative remedial process for protecting Amawi's due process and equal protection rights and

justifies refusing to recognize a non-statutory cause of action under a *Bivens* theory to vindicate

those rights.   They admit that Congress has exempted discretionary BOP inmate housing

decisions from APA review but argue that the exemption is arguably inapplicable to decisions

regarding the classification and segregation of prisoners.

The Court disagrees; the APA does not provide any alternative process for protecting Amawi's rights, much less an adequate one.   The APA provides judicial review for those suffering because of final federal agency action, 5 U.S.C. § 702(a), but by the law's very terms, it does not apply to discretionary agency action, 5 U.S.C. § 701(a).   Prison placement decisions are committed to BOP discretion, so are not covered by the APA.   Additionally, the federal criminal code expressly exempts imprisonment decisions from review under the APA: "The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code [the APA], do not apply to the making of any determination, decision, or order under this subchapter."   18 U.S.C. § 3625. The referenced subchapter, setting forth the law on imprisonment by the BOP, includes the provision that "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b).   This has been construed to include placement in a unit within an institution. *See, e.g., Harris v. United States*, No. 2:13-CV-214-WTL-MJD, 2013 WL 3724861, at *1-*2 (S.D. Ind. July 15, 2013) (holding decision to place inmate in the CMU of a federal prison not cognizable under the APA).   Because the APA does not apply to the decision to house Amawi in the USP-Marion CMU, it does not provide him a remedy to complain of that placement decision.

The defendants' suggestion that Congress' decision to exempt prison placement decisions from APA review indicates it did not intend those decisions *ever* to be reviewable ignores the importance of courts' protecting inmates' due process and equal protection rights.   Indeed, *Bivens* itself was based on the general premise that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Id.* at 392 (internal quotations omitted).   Far from suggesting review should never happen, Congress' failure to allow APA review of prison placement decisions weighs in favor of providing a cause of action under a *Bivens* theory for violation of inmates' constitutional rights.   Congress is unlikely to have intended to allow federal employees to act without some kind

6

of constitutionality review of their actions.   *See Carlson v. Green*, 446 U.S. 14, 22 (1980) (suggesting "'constitutional design'" would be stood on its head if federal officials did not face at least the same liability as state officials guilty of the same constitutional transgression").

Additionally, any such remedy that might have been available under the APA would not have been adequate because an APA cause of action does not "provide roughly similar incentives for potential defendants to comply with the constitutional requirements while also providing roughly similar compensation to victims of violations."   *Engel*, 710 F.3d at 705 (internal brackets omitted).   An APA suit can provide only prospective relief and does not provide any compensation for past constitutional violations.   *See* 5 U.S.C. § 702 (only authorizing "action[s] in a court of the United States seeking relief other than money damages").   The inability of an APA remedy to compensate Amawi for past violations of his constitutional rights weighs in favor of allowing him to vindicate those rights in a suit for damages under a *Bivens* theory.   *See Engel*, 710 F.3d at 706 (finding *habeas corpus* relief inadequate alternative remedy, in part, because it is "incapable of compensating the victim of a *Brady* violation for the constitutional injury he has suffered.").

Nor would an APA remedy provide the incentives to comply with the constitution that are available by the threat of a *Bivens* action for compensatory and punitive damages against an individual.   Personal financial liability is a more effective deterrent than a remedy against the United States or its agencies, as the APA provides.   *See Carlson*, 446 U.S. at 21-22 (noting that compensatory and punitive damages against an individual are more effective deterrent than compensatory damage under the Federal Tort Claims Act against the United States).

Because there is no "alternative, existing process" to protect Amawi's constitutional rights that convinces the Court that judicial intervention is inappropriate, the Court is inclined to find a *Bivens* theory applicable to Counts 1 and 2 of this case based on the first *Wilkie* factor.

b.      Special Factors

The Court now turns to the second *Wilkie* factor, the exercise of judgment in light of "any special factors counselling hesitation before authorizing a new kind of federal litigation."   *Wilkie*, 551 U.S. at 550 (internal quotations omitted).   The Seventh Circuit Court of Appeals has noted that "this part of the analysis has tended to focus on concerns about judicial intrusion into the sensitive work of specific classes of federal defendants" like military officials, immigration authorities, and federal agencies, or "concerns about doctrinal unworkability."   *Engel v. Buchan*, 710 F.3d 698, 707-08 (7th Cir. 2013).

The defendants suggest that courts' tradition of deference to prison officials when it comes to prison administration matters weighs against allowing Amawi to proceed on a *Bivens* theory for his due process and equal protection claims.   While this deference is well-recognized, it is not without limits, and courts will not hesitate to step in when prison officials unjustifiably violate prisoners' constitutional rights when exercising their discretion.   Prison officials should not be allowed free reign to violate prisoners' (admittedly sometimes limited) constitutional rights under the guise of "wise" administration.   The level of deference due to the defendants in this case will surely be explored at later stages of this litigation.   Nor is this deference to prison officials defeated by allowing a *Bivens* action; it has been repeatedly and successfully exercised in lawsuits against state prison officials under 42 U.S.C. § 1983.   *See, e.g., Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (deferring to prison officials regarding mail and marriage policies); *Taylor v. Waterloo*, No. 07 C 6644, 2009 WL 2589509, at *8 (N.D. Ill. Aug. 18, 2009) (deferring to prison officials regarding security classification and placement decisions).   In the meantime, the special context of prison administration does not counsel against recognizing a *Bivens* action in Amawi's case.

Additionally, the "special factor" analysis in *Carlson v. Green*, 446 U.S. 14, 19 (1980),

8

applies equally in this case.   There, the Court of Appeals for the Seventh Circuit considered the due process, equal protection and Eighth Amendment claims of the administrator of a deceased prisoner who allegedly died from inadequate medical care in prison.   When examining whether any "special factors" existed with respect to BOP defendants, the same type of defendants at issue in this case, the Court of Appeals noted that:

> the case involves no special factors counselling hesitation in the absence of affirmative action by Congress.   [The defendant BOP officials] do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate. . . .   Moreover, even if requiring them to defend respondent's suit might inhibit their efforts to perform their official duties, the qualified immunity accorded them . . . provides adequate protection.

*Id.* at 19 (internal citations omitted).   *Carlson*'s reasoning applies equally to the defendants in this case.

The defendants have pointed to no other "special factors" that would weigh against allowing Counts 1 and 2 to proceed under a *Bivens* theory.   Therefore, the second *Wilkie* factor will not prevent the Court from finding *Bivens* theory applicable to Counts 1 and 2 of this case.

For the foregoing reasons, after *de novo* review, the Court finds Amawi may proceed on Counts 1 and 2 using a *Bivens* theory.

**III.     Conclusion**

As explained above, the Court:

- **ADOPTS** the Report (Doc. 166) as **SUPPLEMENTED** by this order;

- **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss or for summary judgment.   The motion is **GRANTED** to the extent it seeks summary judgment on Count 3, and the BOP is terminated from this case.   The motion is **DENIED** to the extent it seeks dismissal of Counts 1 and 2; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

Further, the Court believes this order, to the extent it addresses the use of a *Bivens* theory in

Counts 1 and 2, "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation" 28 U.S.C. § 1292(b). Accordingly, the parties shall have ten days from entry of this order to apply to the Court of Appeals for permission to take an interlocutory appeal of this issue. *Id.*

**IT IS SO ORDERED.**
**DATED: August 11, 2015**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**